**In re CONNELL.**

**Patent Appeal No. 3854.**

Court of Customs and Patent Appeals.
Nov. 22, 1937.

Tracy R. V. Fike, of New York City (Frederic P. Warfield and Griffith Beems, both of New York City, of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office which affirmed the decision of the Examiner denying the patentability, in view of prior art cited, of five claims, numbered, respectively, 2, 3, 6, 7, and 8, of appellant's application for patent relating to flow-gages. No claim seems to have been allowed.

Claim No. 2 illustrates the subject matter. It reads: "2. A flow-gage comprising a gage tube and an indicating element therein movable longitudinally of the tube, the cross-sectional area of the bore of the tube increasing relatively gradually in the direction of flow throughout a portion of the length of the tube and increasing relatively rapidly in the direction of flow throughout another portion of the length of the tube, calibrations of one character for reading the movement of the indicating element along the first-mentioned portion, and calibrations of another character for reading the movement of the indicating element along said other portion."

The limitations contained in the other claims are not thought to lend patentability thereto, if claim 2 be not allowable, and we find no contention to the contrary in the brief on behalf of appellant. No oral argument was presented in his behalf at the hearing before us.

The references cited are: Thomson et al., 848,704, April 2, 1907; Inhoffen (Brit.), 12,857, November 17, 1910; Hamill (Brit.), 192,455, January 29, 1923.

The following description of appellant's device is given in the decision of the Board: "The claims on appeal are directed to a flow-gage particularly designed for the measurement of gases. This gage is in the form of a vertical tube, the bore of which is tapered. A part of the tube has only a slight taper but the remainder diverges at a more rapid rate. The tube contains a ball or balls, which are caused to move upwardly to a greater or lesser extent, dependent upon the rate of flow of the gas passing through the tube. In that portion of the tube of small taper, slight differences in the rate of flow will produce comparatively large movements of the indicating ball. In that portion of greater taper, corresponding movements of the ball will be in response to considerable greater differences in the rate of flow. By the expedient referred to, a portion of the meter may be calibrated in a manner to permit more ac-

curate determination of the rate of flow than in the remaining portion."

In the final analysis, appellant seems to rely upon the so-called "double taper" (with the scale corresponding thereto) feature of the claims to distinguish his device patentably from the prior art.

The British patent to Inhoffen is for a gas measuring device, and shows a calibrated tapering tube and scale, but the taper and scale are uniform from end to end.

The patent to Hamill, which also is a British patent, is entitled "Fluid Flow Meters." In certain of the drawings tapering tubes are shown, and the decision of the Board points out that the provisional specification states: "The area and configuration of the measuring opening may be varied in cross section to obtain a scale having regular or irregular characteristics as desired."

The Hamill reference seems to be the one principally relied upon by the Board, it being said in its decision: " * * * The particular configuration employed by appellant is obviously within the generic disclosure of the British [Hamill] patent and in our opinion, if not actually taught by the patent, is an obvious embodiment of the generic teaching."

The patent to Thomson et al. is entitled "Liquid-Meter," and the specification states that such meter is "of the class in which the flow of liquid is measured by the movement of a disk or other body * * * in a tapered pipe against the resistance of a weight or spring." Figures of the drawings quite clearly disclose a pipe which has a double taper.

The appellant argues as to the Thomson et al. patent that it is "for a water meter for recording volumes of water passing through a horizontal main or conduit;" that it is very "unlike" appellant's flow-gage, and says "it may even be doubted whether the water-metering art and the gas-flow indication art are analogous."

This latter assertion seems largely to be met by the fact that appellant's own specification is not limited to a gas-flow gage, nor are any of the claims so limited, except claim No. 8. Both the specification and the group of claims 2, 3, 6, and 7 obviously are broad enough to include the measuring of liquids as well as gases. Appellant's specification refers to measuring "fluid." "Fluid" is a term broad enough to include both liquids and gases.

The brief for appellant places emphasis upon the use of his device for measuring the flow of gases, such as oxygen used in resuscitation work, and gases used in administering anesthetics, in which cases a very fine indication of the flow of the gases throughout a particular range and also an indication of difference in flow between widely varying limits are taught by appellant's specification to be highly desirable. Such results, it is claimed, are obtained by appellant's tube (and corresponding gage) which has "a relatively gradual increase in cross-sectional area in the direction of flow throughout a portion of its extent and a relatively rapid increase in cross-sectional area in the direction of flow throughout another portion of its extent"— in other words, the double taper with corresponding scale.

It may be conceded that appellant's device differs greatly from that of Thomson et al. and that the latter is unsuited to many of the uses of the device of appellant and vice versa. Nevertheless, the principle disclosed in appellant's "double taper" is present in the Thomson et al. device, and, since the art here involved is that of measuring fluids and gases by means of a gage, we do not think Thomson et al. may be rejected as belonging to a nonanalogous art. The measuring function is the proximate function of the art involved, and the proximate function determines the nearness of the art. In re Kylstra, 87 F. (2d) 487, 24 C.C.P.A. (Patents) 938.

It should be pointed out that appellant's drawings disclose a double calibrated scale. The scale as to that portion of the tubing in which a relatively gradual increase of taper is shown as substantially uniformly spaced, while that as to the part in which the taper is so formed as to assure a rapid increase in flow—that is, the wider and more pronounced flare in the tube—is graduated, so that more accurate readings of rate of flow when it reaches the higher rate of increase is apparently possible.

It seems to be taught by Hamill that his calibrations should correspond with the cross-sectional area of his tube and, as we understand the decisions below, this feature was held to be obvious, involving nothing more than mechanical skill.

The brief for appellant quite earnestly argues that the Board misread the Hamill specification; that, when closely read, the specification "discloses, at the most, no ad-

vance over the uniform tapering tube of the Inhoffen patent;" and that neither of those patents shows the double taper with scale to correspond.

Appellant's arguments upon this, as well as upon all other points advanced in his brief, have been quite carefully considered. It is true that no one of the references shows the exact arrangement disclosed by him—else, of course, the case would not be here. So, finally, the question is whether the changes made by him so differ from the teachings of the prior art as to constitute invention. We are unable so to conclude, and do not feel that the authorities cited by appellant support his contentions as a matter of law.

The decision of the Board of Appeals is therefore affirmed.

Affirmed.